683 P.2d 963

**Joe R. TRUJILLO, Plaintiff-Appellee,**

v.

**Gary PURO, M.D., Defendant-Appellant.**

No. 7402.

Court of Appeals of New Mexico.

May 8, 1984.

Certiorari Denied June 1, 1984.

Kemp W. Gorthey, Campbell, Byrd & Black, P.A., Santa Fe, for defendant-appellant.

Stephen G. Schmidt, Paul F. Abrams, Prince, Schmidt & O'Friel, Santa Fe, Daniel Shapiro, Tanya L. Scott, Ortega & Snead, P.A., Albuquerque, for plaintiff-appellee.

## OPINION

DONNELLY, Chief Judge.

Following rehearing this Court's prior opinion is withdrawn and the following opinion is substituted therefor.

Defendant Gary Puro, M.D. brings this interlocutory appeal from an order of the district court denying his motions for failure to state a claim and partial summary judgment on the second amended complaint of the plaintiff Joe R. Trujillo. On appeal defendant raises three issues: (1) the trial court lacks subject matter jurisdiction; (2) error in refusal to consider an affidavit of a physician; and (3) failure to state a cause of action as to Count V of the complaint. We reverse.

*Facts*

Plaintiff brought this action against the defendant, Dr. Gary Puro, alleging inter alia, medical malpractice, negligent misrepresentation, battery, and intentional infliction of emotional distress. An additional claim brought by plaintiff's wife, Victoriana Trujillo, for loss of consortium, was dismissed for failure to state a claim and no appeal has been taken thereon. The litigation herein had its genesis in treatment accorded by defendant for an eye problem suffered by plaintiff.

The defendant filed a motion for partial summary judgment as to Counts I (malpractice), II (negligent misrepresentation), III (battery), and V (intentional infliction of emotional distress). Accompanying the

motion was an affidavit by Larry Londer, M.D. Following a hearing, the trial court entered an order dismissing the claim of plaintiff's wife and denying the remainder of defendant's motion. In the order denying the motion, the court recited in pertinent part:

1. With respect to all claims of both plaintiffs * * * in the Second Amended Complaint, the Court has subject matter jurisdiction, and plaintiffs have fulfilled all legal requirements regarding presenting and obtaining a decision upon such claims at the Medical-Legal Panel.

2. The Affidavit of Larry Londer, M.D. may not be used in support of the Motion * * * because the record * * * indicates that [the doctor] * * * has previously treated the plaintiff * * *.

3. All aspects of Count V * * * state a claim upon which relief can be granted.

The trial court certified its ruling on the motion for partial summary judgment and failure to state a claim as a matter involving controlling issues of law, and this Court granted interlocutory appeal.

## I. *Jurisdictional Issue*

Defendant contends that the trial court lacks jurisdiction over certain of the allegations in plaintiff's second amended complaint because those claims were not first presented for consideration by the medical review commission. NMSA 1978, § 41–5–15(A) (Repl.Pamp.1982). Specifically, defendant argues that plaintiff's application to the medical review commission did not include the claims for malpractice, negligent misrepresentation, battery, and intentional infliction of emotional distress.

Because these claims were not submitted to the medical review commission, defendant urged dismissal with prejudice, claiming the three-year statute of limitations under the Medical Malpractice Act has run. NMSA 1978, § 41–5–13 (Repl.Pamp.1982).

■ With respect to those claims required to be first presented to the medical review commission, plaintiff met the requirements of the Medical Malpractice Act.

NMSA 1978, Section 41–5–15(B)(1) (Repl. Pamp.1982) provides that the application to the medical review commission shall contain "a brief statement of the facts of the case, naming the persons involved, the dates and the circumstances, so far as they are known, of the alleged act or acts of malpractice." Under this Section it is not necessary that each of plaintiff's counts, nor each of his allegations, be presented to the commission. Plaintiff's application satisfied the requirements of Section 41–5–15 as to the malpractice claims. *See* NMSA 1978, Section 41–5–3(C) (Repl.Pamp.1982). Thus, the district court had subject matter jurisdiction over the malpractice claims, as defined by the Medical Malpractice Act, asserted in Counts I (malpractice) and III (battery). *See* Section 41–5–3(C).

■ As to the claims not falling within the Medical Malpractice Act, such as the claims for negligent misrepresentation and intentional infliction of emotional distress, the district court also had jurisdiction. These claims do not first have to be presented to the medical review commission because they do not come within the definition of a malpractice claim. *See* Section 41–5–3(C).

Our disposition of this issue comports with *Perez v. Brubaker*, 99 N.M. 529, 660 P.2d 619 (Ct.App.1983), which holds that application to and a decision by the medical review commission are jurisdictional prerequisites to filing a complaint based on medical malpractice. *See Saiz v. Barham*, 100 N.M. 596, 673 P.2d 1329 (Ct.App.1983). *See also Jiron v. Mahlab*, 99 N.M. 425, 659 P.2d 311 (1983).

## II. *Affidavit of Expert*

Defendant performed surgery for removal of a cataract on plaintiff's right eye on April 23, 1980. Shortly after surgery, plaintiff reported to defendant that he was experiencing a sharp pain in his right eye. Defendant was unable to schedule an immediate appointment to see plaintiff or make arrangements for him to see another physician. Plaintiff alleged that this delay resulted in a loss of vision in his right eye.

Defendant continued to treat plaintiff's eye condition for about two months; however, when additional complications arose, defendant referred plaintiff to Dr. Larry Londer, an ophthalmologist, who then became plaintiff's treating physician.

After plaintiff filed suit herein, defendant submitted an affidavit from Dr. Londer, filed in support of defendant's motion for partial summary judgment. Dr. Londer's opinions set forth in his affidavit were based on matters ascertained by him from his reading of defendant's deposition, a review of the records of defendant's care and treatment of plaintiff as attached to defendant's deposition, and from Dr. Londer's own treatment of plaintiff.

■ In denying defendant's motion for partial summary judgment, the trial court refused to consider the affidavit of Dr. Londer because "Dr. Londer has previously treated the plaintiff, Joe R. Trujillo, as a patient." Defendant asserts that the trial court erred in refusing to consider Dr. Londer's affidavit and that a physician who has previously treated a plaintiff in an action alleging negligence or malpractice is not precluded from testifying as an expert for the defendant. We agree.

At the hearing on the motion for summary judgment, counsel for plaintiff argued to the trial court that it should strike Dr. Londer's affidavit because of NMSA 1978, Civ.P.Rule 26(B)(3)(b) (Repl.Pamp.1980). Plaintiff asserts that the proper method to obtain information from a physician who has been either a treating physician or has been employed as an expert necessitates compliance with Rule 26(B)(3). Rule 26(B)(3)(b) provides:

> (b) a party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain

facts or opinions on the same subject by other means * * *.

Defendant sought by written interrogatories to plaintiff to ascertain the names of any expert witnesses plaintiff intended to call at trial. Plaintiff answered, stating he "did not have an expert witness at the present time." At the hearing on defendant's motion for summary judgment, plaintiff argued that Dr. Londer was a treating physician of plaintiff "subsequent to his treatment by Dr. Puro," that Dr. Londer "was hired by the plaintiffs to prepare a report on Mr. Trujillo's condition," and that in "1982 he was hired in anticipation of this litigation to give an expert opinion." At the motion hearing, plaintiff's counsel also stated: "At this point we don't intend to call Dr. Launders [sic]" and stated that the plaintiff could give the court copies of checks to show that plaintiff had employed Dr. Londer prior to the time defendant obtained his affidavit.

■ Plaintiff did not in fact introduce the cancelled checks into evidence, make them part of the record, or submit an affidavit to support his counsel's oral statements to the court that plaintiff had hired Dr. Londer as an expert. Arguments of counsel are not evidence for the purpose of summary judgment. *Phillips v. Allstate Insurance Co.*, 93 N.M. 648, 603 P.2d 1105 (Ct.App.1979). Plaintiff had the burden of establishing that Dr. Londer was in fact hired as an expert witness within the purview of Rule 26(B)(3)(b) in order to invoke its provisions. Rule 26(B)(3)(b) specifically concerns itself with facts known and opinions held by experts "otherwise discoverable under the provisions of Paragraph (B)(1) of this rule [26] and *acquired or developed in anticipation of * * * trial.*" (Emphasis added.)

Plaintiff further contends that Dr. Londer's affidavit was not proper for consideration on the motion for summary judgment because of the fiduciary relationship between a physician and patient which "requires a duty of confidentiality and loyalty to his patient * * *." Plaintiff relies in part upon *Miles v. Farrell*, 549 F.Supp. 82

(N.D.Ill.1982). *Miles* is not determinative, however, as to whether the affidavit of Dr. Londer should have been considered incident to defendant's motion for summary judgment since the court expressly noted that Illinois, by statute, recognized the existence of a doctor-patient privilege. Although Illinois by statute recognizes a physician-patient privilege, it was determined to have been waived in *Miles*. Ill.Rev.Stat. ch. 51, § 5.1. The court in *Miles* noted that there was an ongoing relationship between the physician and his patient which created a fiduciary duty not to disclose information. Also, in *Miles*, despite the ongoing doctor-patient relationship, the physician never advised his patient that he was working for the defendant at the same time. We have no ongoing physician-patient relationship in the case before us.

In *Orr v. Sievert*, 162 Ga.App. 677, 292 S.E.2d 548 (1982), the court considered several contentions similar to those advanced in the instant case. There, suit was filed by the mother of a young child against several physicians, a professional association, and their medical malpractice insurer for allegedly conspiring to deprive her son of his rights in a medical malpractice suit. After suit was filed against the professional association for malpractice, the association's attorneys learned through discovery proceedings, that Drs. Sievert, Potts and O'Brien had treated the child following initial treatment by the professional association. Counsel for the association obtained affidavits from Sievert, Potts and O'Brien reciting that the treatment provided by Dr. Harris and the professional association had been in accordance with accepted medical procedures. The affidavits were used in support of a motion for summary judgment by the association and Dr. Harris. Upon ascertaining that Sievert, Potts and O'Brien had not obtained a release before giving the information or opinions rendered in their affidavits, plaintiff also sued the doctors for conspiring, violation of privacy and disclosing medical treatment.

In *Orr* on appeal, it was held that, although even in the absence of a doctor-patient privilege, a doctor has a professional and contractual duty to protect the privacy of his clients, plaintiff was found to have waived her son's qualified right to privacy by filing suit for medical malpractice. The court held:

> Once a patient places his care and treatment at issue in a civil proceedings, [sic] there no longer remains any restraint upon a doctor in the release of medical information concerning the patient within the parameters of the complaint. *To hold otherwise would allow a patient to restrain a doctor who possesses the most relevant information and opinions from responding to inquiries as to such information ... without a written authorization, court order or subpoena.*

292 S.E.2d at 550. [Emphasis added.]

Plaintiff also argues that under NMSA 1978, Section 61–6–14(B)(5) (Supp.1983), a physician is precluded from "willfully or negligently divulging a professional secret." The latter statute does not create a privilege; it only describes ethical constraints placed upon a physician, grounded in part upon the Hippocratic oath. Because there is no physician-patient privilege in New Mexico, except as provided in Evid. Rule 504 (providing for a psychotherapist-patient privilege), statements by a treating physician concerning his patient do not involve ethical issues unless they relate to matters confided to a physician by his patient in confidence. Dr. Londer's affidavit does not draw upon matters involving confidential communications and was proper for consideration incident to defendant's motion for summary judgment. *See Orr v. Sievert.*

The physician-patient privilege was not recognized at common-law and in those jurisdictions where the privilege has been found to exist it has generally been grounded upon an express statutory provision. *Randolph v. Supreme Liberty Life Insurance Co.*, 359 Mo. 251, 221 S.W.2d 155 (1949); *Bozicevich v. Kenilworth Mercantile Co.*, 58 Utah 458, 199 P. 406 (1921); *see also* Annot. 10 A.L.R. 4th 552 (1981).

Both Wigmore and McCormick in their treatises on evidence have argued against recognition of the physician-patient privilege. 8 J.H. Wigmore, *Evidence* § 2380(a) (McNaughton rev. 1961); *McCormick's Handbook of the Law of Evidence* § 105 (E. Cleary 2d ed. 1972); *see also Williams v. City of Gallup,* 77 N.M. 286, 421 P.2d 804 (1966).

Even in those jurisdictions which recognize a physician-patient privilege, most courts have generally found a waiver of the privilege as to all information relevant to the health and medical history which a plaintiff has placed in issue. *Trans-World Investments v. Drobny,* 554 P.2d 1148 (Alaska 1976).

 The supporting affidavit submitted by defendant in conjunction with his motion for summary judgment was properly obtained and submitted. In New Mexico, an expert witness, so long as he is qualified, may give opinion testimony. *Sewell v. Wilson,* 97 N.M. 523, 641 P.2d 1070 (Ct.App.), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982); NMSA 1978, Evid.R. 702 (Repl.Pamp.1983). Except as otherwise provided in the rules of evidence, every person is competent to be a witness, and unless specifically delineated in such rules or the constitution, no other privileges are recognized. NMSA 1978, Evid.R. 601 (Repl.Pamp.1983); NMSA 1978, Evid.R. 501 (Repl.Pamp.1983). *Cf.* NMSA 1978, § 38–6–6.

In *State ex rel. Attorney General v. First Judicial District,* 96 N.M. 254, 629 P.2d 330 (1981), it was held that evidentiary rules can be adopted or recognized only by the supreme court and that New Mexico limits the privileges available to those recognized by the constitution, the rules of evidence, or other rules promulgated by the supreme court. *State ex rel. Attorney General* held that the adoption of the Rules of Evidence manifested the abrogation and inapplicability of those evidentiary privileges which antedated the adoption of the new Rules of Evidence. *See also Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976), *cert.*

*denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

 The affidavit submitted by defendant in support of his motion for partial summary judgment was not privileged, and the matters recited therein were proper for consideration.

Defendant argues that if the affidavit of Dr. Londer was properly considered, his motion for summary judgment should prevail. Plaintiff filed an affidavit of Dr. Albert S. Leveille, an ophthalmologist, in opposition to defendant's motion for summary judgment.

 Summary judgment is to be used with great caution, and is improper if, after all reasonable doubts have been resolved in favor of the opponent, all the evidence on file shows there is a genuine issue of material fact. *Jelso v. World Balloon Corporation,* 97 N.M. 164, 637 P.2d 846 (Ct.App. 1981). Expert testimony from a qualified doctor in the same field, familiar with the circumstances of defendant's practice, the standard of care of physicians, and the testimony of plaintiff, is generally sufficient to raise questions of material fact. *Id.* In acting upon a motion for summary judgment, it is not the function of the trial court to weigh the evidence, but rather to determine whether the material facts are undisputed. *Kelly v. Montoya,* 81 N.M. 591, 470 P.2d 563 (Ct.App.1970).

It was error for the trial court to refuse to consider the affidavit of Dr. Londer incident to defendant's motion for summary judgment. On remand, the trial court should consider Dr. Londer's affidavit, the opposing affidavit of Dr. Leveille filed by plaintiff, and any other matters properly before the court in determining whether an issue of material fact exists as to the motion for summary judgment.

### III. *Claim of Intentional Infliction of Emotional Distress*

 Plaintiff's fifth Count was entitled "Breach of Fiduciary Duty," but the allegations are, in essence, a claim for intentional infliction of emotional distress. Plaintiff

alleged that defendant engaged in certain intentional acts with "the knowledge and intent that such conduct would cause ... plaintiff severe emotional distress and anxiety * * *." Plaintiff alleged defendant intentionally included false statements in plaintiff's hospital records; that defendant failed to note in his office records a telephone call received from plaintiff; and that defendant testified falsely, denying receipt of the telephone call. Although the alleged false swearing before the medical review commission by defendant cannot subject defendant to civil liability (NMSA 1978, § 41–5–20(E) (Repl.Pamp.1982)), plaintiff's allegation of defendant's false and intentional entry in the hospital records is sufficient to preclude a motion to dismiss on this claim.

The court in *Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 437 A.2d 1236 (1981) considered an issue similar to that alleged in the instant case. The plaintiff there had alleged that false statements which designated plaintiff as the sole cause of another's death were intentionally written into the hospital records and that as a result of those false records, criminal charges were brought against him. The trial court dismissed plaintiff's claim of intentional infliction of emotional distress on the ground that it did not state a claim upon which relief could be granted. The Superior Court of Pennsylvania reversed, saying:

> If the appellees in the present appeal, defendants below, in fact intentionally propagated a falsehood when they wrote that Mr. Lavin's death was attributable solely to Mr. Banyas, we believe that they could also be found liable for the emotional distress suffered by Mr. Banyas.

293 Pa.Super. at 127, 437 A.2d at 1239.

■ In his application for interlocutory appeal, defendant states the question presented under this point as "whether Count V of the Second Amended Complaint states a claim for relief." The briefs of the parties address themselves to the issue of whether the count states a claim upon

which relief can be granted. In considering whether a complaint states a cause of action, all facts well pleaded must be accepted as true. *Jones v. International Union of Operating Engineers*, 72 N.M. 322, 383 P.2d 571 (1963). Dismissal for failure to state a claim upon which relief can be granted is improper unless it appears that plaintiff is not entitled to relief under any state of facts provable under the claim. *Pattison v. Ford*, 82 N.M. 605, 485 P.2d 361 (Ct.App.1971).

■ Both plaintiff and defendant refer to this Court in their briefs as one alleging intentional infliction of emotional distress. That cause of action is recognized in New Mexico. *Dominguez v. Stone*, 97 N.M. 211, 638 P.2d 423 (Ct.App.1981); *Mantz v. Follingstad*, 84 N.M. 473, 505 P.2d 68 (Ct. App.1972). Standards set forth in *Dominguez* and *Mantz*, taken from the Restatement (Second) of Torts, Section 46 (1965), require that the conduct which causes the emotional distress be "extreme and outrageous" and that the emotional distress be severe. *Dominguez*, 97 N.M. at 214–15, 638 P.2d at 426–27.

Defendant argued below that plaintiff's complaint should be dismissed because the conduct alleged by plaintiff was neither extreme nor outrageous, and because plaintiff has failed to allege the existence of any physical injury attendant to his claim of intentional infliction of emotional distress.

■ Plaintiff's complaint sufficiently alleges a claim of intentional infliction of emotional distress. There is no requirement that plaintiff plead each element of his claim, including resulting bodily harm, in order to allege a cause of action for intentional infliction of emotional distress. *See Dominguez v. Stone*. Under our liberal rules of pleading the principal function of a complaint is to give fair notice of the general nature of the claims asserted. *Malone v. Swift Fresh Meats Co.*, 91 N.M. 359, 574 P.2d 283 (1978); *Pacheco v. Martinez*, 97 N.M. 37, 636 P.2d 308 (Ct.App. 1981). There is no requirement that plaintiff suffer bodily harm in order to recover for intentionally inflicted emotional dis-

tress, although he may recover for such harm if it results from such conduct. *See Dominguez v. Stone; see also* Restatement (Second) of Torts, § 46(1) (1965).

The trial court, in its order entered in this cause below, concluded that "[a]ll aspects of Count V of the Second Amended Complaint state a claim upon which relief can be granted." Although lacking in specificity, we agree with the trial court that Count V suffices to state a claim alleging intentional infliction of emotional distress, except as to those allegations that are grounded upon a claim of false statements and testimony under oath. Defendant contends an action for intentional infliction of emotional distress may not be premised upon a claim that defendant gave false statements and testimony as a witness in a judicial proceeding, citing Restatement (Second) of Torts, § 588 (1977). *Cf. St. Vincent Hospital v. Salazar,* 95 N.M. 147, 619 P.2d 823 (1980) (holding that the statutory exemption from discovery provided to panelists did not include testimony heard by the panel). *See also* NMSA 1978, § 41–5–20(E) (Repl.Pamp.1982). The record before us on appeal, however, does not disclose what the underlying facts are upon which plaintiff's claim for intentional infliction of emotional distress is grounded or whether they cover written or oral statements under oath made outside any judicial proceeding. Under this posture, it was not error to deny defendant's motion for failure to state a claim. In considering whether a complaint states a claim upon which relief can be granted, the courts accept as true all facts well pleaded. *Groendyke Transport, Inc. v. New Mexico State Corp. Commission,* 85 N.M. 718, 516 P.2d 689 (1973). The purpose of NMSA 1978, Civ.P. Rule 12(b)(6) (Repl.Pamp.1980) is to test the formal sufficiency by which the claim is alleged, not the facts upon which the claim is supported. *McCasland v. Prather,* 92 N.M. 192, 585 P.2d 336 (Ct.App.1978).

The allegations contained in Count V are sufficient to state a claim. If amplification is necessary, plaintiff should be granted leave to amend. NMSA 1978, Civ.P.R. 15(a) (Repl.Pamp.1980).

Reversed and remanded for proceedings consistent with this opinion.

IT IS SO ORDERED.

BIVINS and MINZNER, JJ., concur.