777 P.2d 371

Severo A. CHAVEZ, Plaintiff–Appellant,

v.

MANVILLE PRODUCTS CORPORA-
TION and Manville Sales
Corporation, Defendants–Appellees,

No. 17596.

Supreme Court of New Mexico.

July 5, 1989.

Rehearing Denied Aug. 8, 1989.

David Graham, Eliu E. Romero, Taos, for plaintiff-appellant.

William H. Carpenter, Michael B. Browde, Albuquerque, amicus curiae New Mexico Trial Lawyers Ass'n.

Poole, Tinnin & Martin, Mel E. Yost, Christopher Moody, Santa Fe, for defendants-appellees.

Carpenter, Crout & Olmstead, Michael W. Brennan, Santa Fe, amicus curiae Ass'n of Commerce & Industry of N.M.

## OPINION

SCARBOROUGH, Justice.

Plaintiff-appellant, Severo A. Chavez, brought suit against his former employer for breach of an express or implied employment contract and for retaliatory discharge. Defendants-appellees are the Manville Products Corporation and Manville Sales Corporation (collectively Manville). Chavez appeals the entry of summary judgment against him on claims sounding in contract, and the entry of a directed verdict against him on the claim of retaliatory discharge. We granted motions from the New Mexico Trial Lawyers Association and from the Association of Commerce and Industry of New Mexico to submit amicus briefs. We affirm the dismissal of the contract claims, but reverse the district court on the question of retaliatory discharge and remand for a new trial solely on that issue.

### Factual Background

Manville operates an open pit mine and processing mill for perlite ore at No Agua, New Mexico. Chavez began working at the Manville mine and mill in 1965 as an hourly laborer. By 1973 he had worked his way up to a position as lead mill operator and was a union shop steward. That year, Manville offered Chavez a non-union supervisory position in the production mill, which Chavez accepted. For the next twelve years he worked as a production supervisor.

In the early part of 1985, Manville was engaged in a concerted lobbying effort in support of federal legislation concerning asbestos liability and claims. In a corporate-wide campaign termed the "Call to Action" program, Manville sought to involve its employees in its lobbying efforts. Plant manager Loretta Turner acted as the local coordinator for the No Agua facility. Chavez had been asked to participate in the lobbying effort, but had declined to do so.

On April 3, 1985, plant manager Turner received a request for assistance in influencing an upcoming vote in the United States Senate on proposed asbestos legislation. Turner sent a mailgram to United States Senator Pete V. Domenici stating that the undersigned employees of Manville, including Chavez, urged the Senator to support the legislation.

Chavez had not given Manville permission to use his name. He testified before the district court that when he arrived at work on April 3, shortly before 4:00 p.m., he was asked to assist with the lobbying effort, and he again refused. His immediate supervisor, Jack Carraher, then informed Chavez that he would have to call Turner and tell her of the refusal.

About a month later, Chavez received a letter from Senator Domenici thanking him for his recent mailgram in support of the legislation. Angry, he took the letter to work for an explanation, but states that his immediate supervisor only made light of the matter.

Sometime in the following month Manville decided to terminate Chavez' employment. Turner obtained approval for the termination decision from her district manager and on June 10, 1985, she summoned Chavez to her office. She advised him that he was being laid off for a month. Thereafter, Chavez was told that his job had been eliminated. He was told that he had been selected for termination as only two production foremen were now required and he was the worst of the three employed. In its documentation of the separation, however, Manville listed Chavez as being

ineligible for future employment with the corporation in any capacity.

### Breach of Employment Contract

Chavez' initial employment in 1965 as an hourly worker could be terminated by Manville at will. Later, the terms of his employment were changed when Manville entered into a union collective bargaining agreement covering hourly workers. In 1973, when Chavez contemplated accepting the supervisory position, he realized he would once again have an at-will status absent an agreement to the contrary. This was consistent with Manville's policy of avoiding the use of employment contracts with all salaried personnel. Chavez stated that when he was offered the supervisory position in 1973, he was reluctant to accept it and lose the security afforded by the recently negotiated collective bargaining agreement. He claims he was given an express assurance from the now-deceased former plant manager that he if didn't work out in the new role, he could return to his former hourly position without loss in seniority. Thus, Chavez claims that he had an oral employment contract which Manville breached in 1985 when it refused his request to return him to hourly work.

In support of its motion for summary judgment, Manville submitted an employee agreement executed by Chavez and Manville in 1965 and an employee handbook for salaried employees issued in 1981, which was in effect when Chavez was fired. Manville argues that the provisions in these documents concerning Chavez' at-will status are unequivocal and should be enforced. Chavez answers that the 1965 agreement is irrelevant since it was modified by the collective bargaining agreement and argues that the unilateral publication of the employment manual cannot abrogate the earlier oral agreement between Manville and Chavez.

The "Employment Agreement and Record of Changes," executed in 1965, provides that Chavez' employment was "terminable by either the company or the undersigned [Chavez] at any time." The contract continues and addresses certain other conditions of employment, such as the company ownership of inventions and patents developed while employed at Manville and the nondisclosure of company secrets. The contract then provides:

> It is further agreed that as a condition of said employment, no modification of any of the terms of this employment agreement shall be of any force or effect *unless such modification shall be in writing.*
>
> \* \* \* \* \* \*
>
> The undersigned hereby further agrees that in the event of the transfer of his employment from the company to any subsidiary, parent, or affiliated company thereof, his employment shall continue to be subject to each and all of the terms and conditions hereof, except as modified as herein provided.

(Emphasis added). The Employment Practices section in Manville's 1981 Employee Handbook for salaried personnel states that employment with Manville can be terminated at any time, and, without express authorization of the Board of Directors, employees do not have a contract of employment with the company, either written, verbal, or implied.

New Mexico recognizes an exception to at-will employment when the words and conduct of the parties give rise to an implied employment contract. *Forrester v. Parker,* 93 N.M. 781, 606 P.2d 191 (1980) (implied contract based upon provisions of employee handbook); *Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 766 P.2d 280 (1988) (oral statements made by an employer may be sufficient to create an implied contract), *cert. denied,* —— U.S. ——, 109 S.Ct. 3163, 104 L.Ed.2d 1026 (1989). However, we are of the opinion that the alleged oral representations made to Chavez in 1973 cannot create enforceable contractual obligations in the face of the provision in the 1965 agreement that any modification of the employment agreement must be in writing. As a matter of law, this provision precluded Manville's oral assent to modification of its contractual relationship with Chavez. It also precludes the possibility

that any reliance by Chavez on the alleged representations was reasonable.

Numerous decisions in other jurisdictions recognize that an employer is free to enter into written contracts that explicitly provide the employer may terminate the employment contract at any time, with or without reason. *E.g., Pratt v. Brown Mach. Co.,* 855 F.2d 1225 (6th Cir.1988); *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir.1986); *Eliel v. Sears, Roebuck & Co.,* 150 Mich.App. 137, 387 N.W.2d 842 (1985). Similarly, this Court, in *Lukoski v. Sandia Indian Management Co.,* 106 N.M. 664, 748 P.2d 507 (1988), recognized that various means exist whereby employers may limit their employees' reasonable expectations concerning the employment relationship.

> We do not mean to imply that all personnel manuals will become part of employment contracts. Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions . . . instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual.

*Id.* at 666–67, 748 P.2d at 509–10 (quoting *Leikvold v. Valley View Community Hosp.,* 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984) (en banc)).

In the instant case, it is not the contractual provision concerning at-will employment alone that is significant; also significant is the condition in the 1965 contract that any modification of the employment agreement is to be in writing. This provision, like the at-will provision, is enforceable and clearly was intended to protect the employer from claims based upon oral representations made to employees concerning their employment status, such as were alleged in this case.

■ Chavez asserts that the 1965 agreement is irrelevant since it was modified by the 1973 collective bargaining agreement.

We agree that the union agreement changed Chavez' at-will status. After the adoption of the collective bargaining agreement, termination of hourly workers was controlled by employee seniority, with certain exceptions such as discharge for cause. However, we do not believe the agreement with the union was intended to replace entirely the earlier 1965 agreement. Nothing in the collective bargaining agreement states that it supersedes or revokes any prior contractual agreements that may have been in existence. We conclude that, unless modified, the provisions of the 1965 agreement continued in full effect, and the requirement that changes to Chavez' employment agreement be in writing remained in effect the entire time he worked for Manville. Because the union contract did not purport to cover non-union supervisory personnel, when Chavez accepted the salaried position in 1973 he once again was terminable at will absent a *written agreement* to the contrary. For that reason, summary judgment by the district court in favor of Manville on the contract claims was proper. Based upon our resolution of this question it is unnecessary to address the effect of the subsequent publication of the employee manual in 1981.

■ We still must address, however, Chavez' argument that, even if the 1965 employee agreement precluded oral modification of the employment relationship, he is entitled to relief under principles of promissory estoppel. We disagree. Promissory estoppel requires the party invoking the doctrine to have acted reasonably in justifiable reliance on the promise that was made. *See Eavenson v. Lewis Means, Inc.,* 105 N.M. 161, 730 P.2d 464 (1986). We hold as a matter of law that it was unreasonable for Chavez to change his position in reliance on oral representations contrary to an express term of an employment contract which provided that their agreement could only be modified in writing. Were we to reach a different conclusion, we believe in effect we would be rewriting the terms of the parties' contract, and this we decline to do.

*Retaliatory Discharge*

 In New Mexico, until 1983, the longstanding rule was that an employee who did not have a contract of employment for a definite term could be discharged at will, with or without cause. *E.g., Gonzales v. United Southwest Nat'l Bank of Santa Fe,* 93 N.M. 522, 602 P.2d 619 (1979); *Bottijiliso v. Hutchison Fruit Co.,* 96 N.M. 789, 635 P.2d 992 (Ct.App.1981). In 1983, the court of appeals recognized for the first time in New Mexico a limited public policy exception to the terminable at-will rule. *See Vigil v. Arzola,* 102 N.M. 682, 686–90, 699 P.2d 613, 617–21 (1983), *rev'd on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984). This Court has adhered to the new rule, which allows a discharged at-will employee to recover in tort when his discharge contravenes a clear mandate of public policy. *See Sanchez v. The New Mexican,* 106 N.M. 76, 738 P.2d 1321 (1987); *Boudar v. E G & G, Inc.,* 105 N.M. 151, 730 P.2d 454 (1986). As the *Vigil* court put it:

> For an employee to recover under this new cause of action, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn.

*Vigil,* 102 N.M. at 689, 699 P.2d at 620. The *Vigil* court required that the causal connection between the employee's actions and the retaliatory discharge be shown by clear and convincing evidence. *Id. Vigil* also limited the employee's recovery to actual pecuniary losses rather than the full measure of compensatory damages, including emotional distress or psychological harm. *Id.*

When the instant case was tried to a jury, the judge considered a motion for a directed verdict by Manville at the close of Chavez' case-in-chief. The trial judge granted the motion and ruled that the evi-

dence presented was insufficient to support a jury determination that the discharge was caused by Chavez' protest of the unauthorized use of his name in Manville's lobbying efforts. The trial judge concluded that Chavez had failed to meet the clear and convincing standard articulated in *Vigil.*

Chavez argues on appeal that he presented evidence at trial sufficient to require a jury determination on the factual issue of a causal connection between his actions and Manville's alleged retaliatory discharge.[1] We recently have reviewed the standards for granting a directed verdict in *Melnick v. State Farm Mut. Auto. Ins. Co.,* 106 N.M. 726, 749 P.2d 1105 (1988). While recognizing that the trial court must consider all the evidence, insofar as properly admitted evidence is uncontroverted, any conflicts or contradictions in the evidence must be resolved in favor of the party resisting the motion. *Id.* at 728–29, 749 P.2d at 1107–08 (reaffirming the standard announced in *Skyhook Corp. v. Jasper,* 90 N.M. 143, 146, 560 P.2d 934, 937 (1977), applicable to both trial and appellate courts). We stated that:

> The principal consideration, however, is recognition that interference with the jury function must be minimized so that erosion of a litigant's right to a trial by jury is not effected. To remove a case from the jury, it should be clear that the nonmoving party has presented no true issues of fact which that party has the right to have decided by his peers. If the evidence fails to present or support an issue essential to the legal sufficiency of a legally recognized and enforceable claim, the right to a jury trial disappears. The basis for a directed verdict, therefore, is the absence of an issue for the jury to resolve.

*Melnick,* 106 N.M. at 729, 749 P.2d at 1108 (citations omitted). These basic principles are not altered because the burden of proof

---

1. Whether a clear public policy of this state was shown that may have been violated by Manville's termination action was decided affirmatively by the trial court. *Compare Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 898–900 (3rd Cir.1983) (concluding that the protection of a private employee's freedom of political expression is a clearly mandated public policy under Pennsylvania law). This issue, however, was not raised on appeal.

required for recovery is proof by clear and convincing evidence. In *Melnick*, we noted that " 'even though, to the presiding judge, the possibility of recovery by the plaintiff may appear remote ... the party aggrieved may not [by manner of a directed verdict] be deprived of a jury determination'." *Id.* (quoting *Sanchez v. Gomez*, 57 N.M. 383, 392, 259 P.2d 346, 351 (1953)). Thus, when a plaintiff has introduced evidence that either directly or by permissible inference provides adequate support for all of the essential elements of his claim, *it is for the jury to weigh that evidence against contradictory evidence introduced by the defense and determine if the plaintiff has met the burden of proof required in the case.* The possibility of recovery may appear remote to the trial judge in the normal case involving a "preponderance of the evidence" standard. It may appear even more remote when proof is required by "clear and convincing evidence." However, if the plaintiff has introduced a minimum quantum of evidence from which the jury could reasonably find in his favor under the applicable standard of proof, then the plaintiff is entitled to a jury determination.

■ When the standard is clear and convincing evidence, the question for the trial judge is whether there is sufficient evidence introduced from which a reasonable juror could reach an "abiding conviction" as to the truth of the plaintiff's claim. *See Duke City Lumber Co. v. Terrel*, 88 N.M. 299, 540 P.2d 229 (1975); *In re Foster*, 102 N.M. 707, 699 P.2d 638 (Ct.App.), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (1985); *see also In re Fletcher*, 94 N.M. 572, 613 P.2d 714 (Ct.App.), *cert. denied*, 94 N.M. 674, 615 P.2d 991 (1980).

■ In the instant case, we believe that the evidence presented by Chavez met this threshold standard and, therefore, entry of a directed verdict against him was error.[2] The evidence is entirely circumstantial, but we have long recognized that clear and convincing evidence may be circumstantial in nature. *See Ledbetter v. Webb*, 103 N.M. 597, 711 P.2d 874 (1985); *Sauter v. St. Michael's College*, 70 N.M. 380, 374 P.2d 134 (1962). Also, it is not to be expected in cases of this type that a plaintiff would necessarily discover documentary or other direct evidence in support of his claim.

When we consider as true the following evidence presented by Chavez: that on April 4, the day after his refusal to participate in Manville's lobbying effort, Loretta Turner, said to be informed of the refusal, placed an unwarranted critical memo in Chavez' file concerning his unsafe use of certain equipment; that on the same day his immediate supervisor advised him that he had better be careful because "Loretta is after you"; that when Chavez requested an explanation from his immediate supervisor for the unauthorized use of his name in the lobbying effort, Manville, shortly thereafter, made a decision to terminate him; that after being "laid off" for a month he was advised that his job had been eliminated; that after his termination the number of production crews remained unchanged at two, and Chavez' supervisory position was taken by another employee who had for over five years been assigned to other duties; that Manville made no efforts to

---

2. Amicus cites us to cases in other jurisdictions that utilize a shifting burden of production for testing evidence of causal connection between improper motive and adverse employment action. *Burrus v. United Tel. Co. of Kansas*, 683 F.2d 339 (10th Cir.1982), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Hubbard v. United Press Int'l*, 330 N.W.2d 428 (Minn. 1983). First, the plaintiff must prove a prima facie case of causal connection; the connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. *Burrus*, 683 F.2d at 343. Second, if a prima facie case is established, then the burden of production shifts to the defendant to articulate a legitimate reason for the adverse action. *Id.* Third, if evidence of a legitimate reason is produced, the plaintiff may still prevail if he demonstrates that the articulated reason was a mere pretext. *Id.*

We believe it is unnecessary to consider the shifting of burdens here. The directed verdict was granted at the close of Chavez' case-in-chief and, as discussed in the body of this opinion, it was improper because Chavez had introduced sufficient evidence to make a prima facie showing that his discharge was a result of an improper motive.

place Chavez, an employee of 20 years, in any other position, despite a company policy to the contrary, and instead listed him as being ineligible for future employment with Manville in any capacity, it was well within the province of the fact finder to reach an abiding conviction that the discharge was in response to his noncooperation with Manville's legislative agenda.

To be sure, Manville was prepared to marshall considerable evidence suggesting that the corporation had legitimate business reasons for discharging Chavez: evidence that Chavez was prepared to rebut as best he could. However, it was not for the trial court, nor is it for us, to decide whether Chavez' version of the facts is correct, or whether Manville's is correct, or even whether the two are incompatible. These are questions for the trier of fact who alone in this case can weigh credibility and resolve contradictory testimony.

Chavez and Amicus Curiae also urge us to re-examine *Vigil* insofar as it requires clear and convincing evidence to prove retaliatory discharge, and insofar as it limits the recovery to pecuniary losses.[3] *See Vigil,* 102 N.M. at 689–90, 699 P.2d at 620–21. *Vigil* placed these limitations on the newly recognized tort "[b]ecause the claim in most instances will assert serious misconduct" and "in order to prevent any chilling effect on the employer's freedom in hiring." *Id.*

We believe the *Vigil* court may have been unduly cautious in its initial recognition of this new cause of action. This tort remains the single exception to the at-will doctrine in New Mexico. It is a strict alternative to recovery under a theory of contract. *See Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp.,* 106 N.M. 19, 738 P.2d 513 (1987). We believe requiring the at-will employee to show the discharge contravened a clear mandate of public policy, such as the right to freedom of political expression, suffi-

ciently limits the exception to at-will employment recognized by *Vigil.*

With reference to the standard of proof adopted in *Vigil,* the requirement of clear and convincing proof in civil cases is the exception rather than the rule, an exception whose application we have not been disposed to enlarge. *See, e.g., United Nuclear Corp. v. Allendale Mut. Ins. Co.,* 103 N.M. 480, 485, 709 P.2d 649, 654 (1985). The tort of retaliatory discharge can be characterized as an intentional tort. *Cagle v. Burns and Roe, Inc.,* 106 Wash.2d 911, 726 P.2d 434 (1986) (en banc); *Scott v. Otis Elevator Co.,* 524 So.2d 642 (Fla.1988). Generally, an injured party may recover for intentional torts under a preponderance of evidence standard. *See, E.g., Trujillo v. Puro,* 101 N.M. 408, 683 P.2d 963 (Ct.App.), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984) (intentional infliction of emotional distress); *Anderson v. Dairyland Ins. Co.,* 97 N.M. 155, 637 P.2d 837 (1981) (interference with contractual relations). *But see Snell v. Cornehl,* 81 N.M. 248, 466 P.2d 94 (1970) (fraud); *Duke City Lumber Co. v. Terrel,* 88 N.M. 299, 540 P.2d 229 (1975) (economic duress). We believe the standard of proof required in retaliatory discharge cases should be consistent with the majority of other intentional torts—proof by a preponderance of the evidence.

Similarly, we see no reason to exclude the recovery of damages for emotional distress in an action for retaliatory discharge. In actions based upon breach of an express or implied employment contract, we have refused such recovery. *Silva,* 106 N.M. at 20, 738 P.2d at 514. A cause of action for retaliatory discharge is, however, based upon principles of tort. *Vigil,* 102 N.M. at 688, 699 P.2d at 619. We have consistently allowed recovery for emotional harm in intentional tort cases, *e.g., Apodaca v. Miller,* 79 N.M. 160, 441 P.2d 200 (1968); *Trujillo v. Puro,* 101 N.M. 408, 683 P.2d 963 (Ct.App.), *cert. denied,* 101 N.M. 362, 683 P.2d 44 (1984). Rather than create an

---

**3.** The trial court in this case excluded all evidence of psychological distress not only because *Vigil* did not allow recovery for emotional harm, but also because the court found the evidence irrelevant to the issue of whether Cha-

vez had failed to properly mitigate his pecuniary damages by failing to secure further employment. Chavez sought to introduce the evidence to explain his inability to fully mitigate his damages.

exception, we believe that the injured employee is entitled to be compensated fully, that is, to be compensated for all injuries proximately caused by the wrongful act. We overrule *Vigil* to the extent it limits recovery and requires a clear and convincing burden of proof.

Moreover, we believe the evidence of emotional harm was relevant and material to show that Chavez' inability to secure further employment was not an unreasonable failure to mitigate his pecuniary damages. *See Vigil*, 102 N.M. at 689, 699 P.2d at 620 (recognizing a duty to seek other employment); *see also Rutledge v. Johnson*, 81 N.M. 217, 465 P.2d 274 (1970) ("person injured by tort of another is not entitled to damages for harm he could have avoided by the use of due care after the commission of the tort").

*Conclusion*

Because Chavez' written employment agreement in 1965 precluded oral modification of his contractual relationship with Manville, we affirm the granting of summary judgment against him on the contract claims. Because sufficient evidence was presented to the court to support Chavez' claim of retaliatory discharge, we reverse the entry of a directed verdict on that claim and remand the case to the district court for a new trial solely on the issue of retaliatory discharge. On remand, the standard of proof shall be by a preponderance of the evidence, and the measure of compensatory damages shall include emotional distress attributable to the discharge.

IT IS SO ORDERED.

RANSOM, J., and RUDY S. APODACA, J., Court of Appeals, concur.