779 P.2d 133

**FIRST INTERSTATE BANK OF LEA COUNTY, Plaintiff–Appellant,**

v.

**TAXATION AND REVENUE DEPARTMENT, Defendant–Appellee.**

No. 11487.

Court of Appeals of New Mexico.

Aug. 8, 1989.

Certiorari Denied Sept. 5, 1989.

Eric D. Dixon, Neal & Neal, P.C., Hobbs, for plaintiff-appellant.

Daniel Yohalem, Sp. Ass't. Atty. Gen., Santa Fe, for defendant-appellee.

## OPINION

DONNELLY, Judge.

First Interstate Bank of Lea County (taxpayer) appeals the decision and order of the Secretary of the Taxation and Revenue Department (Department) denying its claim for a refund of taxes paid in connection with transfer of a liquor license. The calendar notice proposed summary affirmance. Taxpayer filed a timely memorandum in opposition to the calendar notice. The court not being persuaded by taxpayer's memorandum affirms the administrative decision and order entered by the Secretary and grants the Department's motion for issuance of a formal opinion.

## FACTS

The facts in this matter are stipulated. On or about August 20, 1982, The Bottle Shop, Inc. (Bottle Shop) executed a promissory note in favor of taxpayer in the principal amount of $50,000.00. The Bottle Shop executed a security agreement securing payment of the note. The property securing the note included a liquor license.

Thereafter, on September 27, 1984, the Bottle Shop executed another promissory note in favor of taxpayer in the principal amount of $53,338.92 plus interest and another security agreement securing the note was executed. The property securing the note included the liquor license.

On June 26, 1987, the Department recorded a lien on all of the Bottle Shop's property in order to collect delinquent taxes. *See* NMSA 1978, §§ 7-1-37 and -38 (Repl.Pamp.1988). The Bottle Shop defaulted on the notes and taxpayer filed a complaint for judgment and foreclosure on August 17, 1987. The Department was made a defendant to the foreclosure action, and filed an answer and cross-claim against the Bottle Shop seeking foreclosure of its lien. On February 25, 1988, a stipulated judgment was entered in the district court foreclosing the liens of taxpayer and the Department. The judgment specifically reserved the Department's right to pursue its claim for delinquent taxes under NMSA 1978, Section 7-1-82 (Repl.Pamp.1988). Taxpayer was given first priority on its lien and the Department was given second priority. The liquor license was ordered sold by special master's sale. The sale was held on November 8, 1988, and taxpayer was the only bidder. Taxpayer bid the amount of its judgment and there were no excess funds with which to pay the Department. The Department of Alcohol Beverage Control did not transfer the liquor license to taxpayer because the Department refused to issue a tax clearance. *See* § 7-1-82. Taxpayer paid the delinquent taxes claimed by the state under protest. A timely claim for refund was filed by taxpayer. The Department denied the claim and taxpayer appealed to the Secretary. The Secretary's decision and order denying taxpayer's claim for refund was filed on April 24, 1989.

## DISCUSSION

■ The issue presented by taxpayer's appeal is whether the state may require payment of delinquent taxes prior to transfer of a liquor license, pursuant to Section 7-1-82, where its liens under Sections 7-1-

37 and –38, have been foreclosed. We answer this question in the affirmative.

Section 7–1–82 creates conditions precedent to approval for the transfer of a liquor license. *In re What D'Ya Call It, Inc.,* 105 N.M. 164, 730 P.2d 467 (1986). *See also In re Farmers Markets, Inc.,* 792 F.2d 1400 (9th Cir.1986). This section assures the Department of payment in full for all taxes due from engaging in business authorized by the liquor license by prohibiting the transfer, assignment, lease or sale of a liquor license unless the conditions as to the payment of taxes have been met. *See In re What D'Ya Call It, Inc.* The tax liability referred to in Section 7–1–82 may become a lien in favor of the state in the amount of taxes due if the filing procedures set forth in Sections 7–1–37 and –38 are followed. *Id.* Taxpayer argues that the foreclosure of the Department's liens pursuant to Sections 7–1–37 and –38 operated to extinguish its claim for delinquent taxes under Section 7–1–82. In essence, taxpayer contends that the Department is required to elect the means by which it will collect delinquent taxes. We disagree.

 As between a licensee and the state, a liquor license is a privilege and not a property right. *See Chronis v. State ex rel. Rodriguez,* 100 N.M. 342, 670 P.2d 953 (1983). The legislature has the power not only to regulate sales of alcoholic beverages, but to suppress such sales entirely. *Id.; Drink, Inc. v. Babcock,* 77 N.M. 277, 421 P.2d 798 (1966). The state has broad police power to regulate the liquor business and the legislature may impose on the liquor industry more stringent regulations than on other type of businesses. *Chronis v. State ex rel. Rodriguez.*

Section 7–1–82 provides in applicable part that:

A. The director of the department of alcoholic beverage control shall not allow the transfer, assignment, lease or sale of any liquor license pursuant to the provisions of the Liquor Control Act until he receives written notification from the director or his delegate that:

(1) the licensee or any person authorized to use the license is not a delinquent taxpayer as defined in Section 7–1–16 NMSA 1978; or

(2) the transferee, assignee, buyer or lessee has entered into a written agreement with the director or his delegate in which he has assumed full liability for payment of all taxes due or which may become due from engaging in business authorized by the liquor license.

The above statute gives the state the options of actively collecting tax liabilities through the filing of a lien against all of the debtor's property, or passively collecting those taxes through the means provided in Section 7–1–82. *Cf.* NMSA 1978, § 60–3A–2(B) (Repl.Pamp.1987) (intent of Liquor Control Act that licensees be fully liable and accountable for use of license, including liability for all taxes charged against license). We find no requirement in any of the relevant statutes that the state elect the means by which it will collect delinquent taxes or that the options are mutually exclusive.

In its memorandum in opposition, taxpayer cites NMSA 1978, Section 55–9–504(4) (Repl.Pamp.1987), in support of its contention that the Department's lien was foreclosed by the special master's sale. We do not dispute that the Department's lien created pursuant to Sections 7–1–37 and –38 was foreclosed. However, Section 55–9–504(4) does not affect the Department's right to collect delinquent taxes pursuant to Section 7–1–82.

Taxpayer also argues against the Department's position on the ground that Section 7–1–82 must be strictly construed against the state because it is a tax statute. *See Field Enters. Educ. Corp. v. Commissioner of Revenue,* 82 N.M. 24, 474 P.2d 510 (Ct.App.1970) (any doubtful meaning or intent of tax statute must be resolved against state and in favor of taxpayer). Section 7–1–82, however, is clear and unambiguous. Where the meaning of statutory language is plain, and the words used by the legislature are free from ambiguity,

there is no basis for interpreting the statute. *Johnson v. Francke,* 105 N.M. 564, 734 P.2d 804 (Ct.App.1987).

The foreclosure of the Department's lien under Sections 7–1–37 and –38 did not affect the Department's rights under Section 7–1–82.

Accordingly, the decision of the Secretary is affirmed.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.