1998-NMCA-063

958 P.2d 753

BANK OF COMMERCE,
Plaintiff–Appellant,

v.

STATE of New Mexico, DEPARTMENT OF TAXATION AND REVENUE,
Defendant–Appellee.

No. 18165.

Court of Appeals of New Mexico.

March 25, 1998.

Certiorari Denied May 5, 1998.

**184**

Robert O. Beck, Beck & Cooper, Clayton, for Appellant.

Tom Udall, Attorney General, Bridget Jacobar, Special Assistant Attorney General, Santa Fe, for Appellee.

*OPINION*

HARTZ, Chief Judge.

{1}   After purchasing a liquor license at a foreclosure sale, Bank of Commerce (the Bank) applied for approval from the director of the Alcohol and Gaming Division of the Regulation and Licensing Department for transfer of the license. Such approval requires clearance from the Taxation and Revenue Department (the Department). *See* NMSA 1978, § 7-1-82 (1995). The Department refused to grant clearance until the Bank paid certain gross receipts taxes purportedly owed by a prior lessee of the license. The Bank paid the taxes but, contending that it had no obligation to pay them, pursued a claim for refund under NMSA 1978, Section 7-1-26 (1994). The Department denied the claim. When the Bank sought judicial review of the Department's decision, the Santa Fe County District Court dismissed the Bank's complaint for failure to state a claim upon which relief can be granted. *See* Rule 1-012(B)(6) NMRA 1998.

{2}   We reverse the decision of the district court. The Department could condition clearance for transfer of the license on payment of the prior lessee's taxes if the prior lessee was a "delinquent taxpayer." *See* § 7-1-82(A). But not all persons who owe taxes are "delinquent taxpayers" within the statutory definition. *See* NMSA 1978, § 7-1-16 (1993). Under the facts alleged in the Bank's complaint, the prior lessee was not a delinquent taxpayer. Therefore, the complaint states a valid cause of action.

I.  *BACKGROUND*

{3}   In reviewing the propriety of a dismissal of a complaint for failure to state a claim, we assume the truth of the allegations contained in the complaint. *Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct.App. 1984). The Bank was a creditor of Don and Rita Crockett. The debt was secured by various real and personal property, including liquor license no. 883. When the Crocketts

defaulted on their obligation, the Bank instituted a foreclosure action against the collateral, joining the Department as a defendant.

{4} On March 2, 1995 the Bank obtained a stipulated judgment and decree of foreclosure. The judgment and decree includes the language: "Defendant State of New Mexico/Department of Taxation and Revenue has no right, title or interest in or to the subject personalty." It also states that "[t]he Interests of all parties hereto other than the [Bank] in and to the subject personalty be and hereby are decreed foreclosed."

{5} The Bank purchased the liquor license at the foreclosure sale. It then applied to the Alcohol and Gaming Division for approval of the transfer of the license. As part of the process the Bank requested clearance from the Department pursuant to Section 7–1–82. Subsection A of that section states:

The director of the alcohol and gaming division of the regulation and licensing department shall not allow the transfer, assignment, lease or sale of any liquor license pursuant to the provisions of the Liquor Control Act until the director receives written notification from the secretary [of the Department] or secretary's delegate that:

(1) the licensee or any person authorized to use the license is not a delinquent taxpayer as defined in Section 7–1–16 NMSA 1978; or

(2) the transferee, assignee, buyer or lessee has entered into a written agreement with the secretary or secretary's delegate in which the transferee, assignee, buyer or lessee has assumed full liability for payment of all taxes due or which may become due from engaging in business authorized by the liquor license.

Section 7–1–16 states:

A. Any taxpayer to whom taxes have been assessed as provided in Section 7–1–17 NMSA 1978 or upon whom demand for payment has been made as provided in Section 7–1–63 NMSA 1978 [relating to sale of business by owner who owes taxes] who does not within thirty days after the date of assessment or demand for payment make payment, protest the assessment or demand for payment as provided by Sec-

tion 7–1–24 NMSA 1978 or furnish security for payment as provided by Section 7–1–54 NMSA 1978 becomes a delinquent taxpayer and remains such until:

(1) payment of the total amount of all such taxes is made;

(2) a retroactive extension of time to file a protest is granted pursuant to Section 7–1–24 NMSA 1978; provided, however, that the taxpayer again becomes a delinquent taxpayer if the taxpayer does not pay, protest or furnish security within the time allowed by the retroactive extension of time;

(3) security is furnished for payment; or

(4) no part of the assessment remains unabated.

B. Any taxpayer who fails to provide security as required by Subsection D of Section 7–1–54 NMSA 1978 shall be deemed to be a delinquent taxpayer.

C. If a taxpayer files a protest as provided in Section 7–1–24 NMSA 1978, the taxpayer nevertheless becomes a delinquent taxpayer upon failure of the taxpayer to appear, in person or by authorized representative, at the hearing set or upon failure to perfect an appeal from any decision or part thereof adverse to the taxpayer to the next higher appellate level, as provided in that section, unless the taxpayer makes payment of the total amount of all taxes assessed and remaining unabated or furnishes security for payment.

{6} The Department refused to issue its clearance because of unpaid gross receipts taxes allegedly owed by Kit Carson, Inn, Inc. (Kit Carson), a lessee of the license from the Crocketts, although there had been no assessment of tax against Kit Carson prior to the request for clearance. The Bank paid the Department $53,881.98 for the claimed taxes on December 5, 1995 and obtained the Department's clearance the following day. On January 3, 1996 the Bank submitted a claim for refund pursuant to Section 7–1–26(A). After the claim was denied on January 12, the Bank filed for refund in district court on January 25, 1996. The district court dismissed the Bank's complaint on January 16, 1997.

## II. *DISCUSSION*

{7} The Department relies primarily on our decision in *First Interstate Bank v. Taxation & Revenue Department*, 108 N.M. 756, 779 P.2d 133 (Ct.App.1989). As here, the bank in that case had acquired a liquor license at a foreclosure sale, but when it sought to transfer the license to its name, the Department refused to issue a clearance under Section 7–1–82 unless the bank paid delinquent taxes. The bank paid the taxes and then claimed a refund. We affirmed the denial of the refund. We rejected the argument that the foreclosure of the Department's lien precluded the operation of Section 7–1–82. Noting that "[a]s between a licensee and the state, a liquor license is a privilege and not a property right," *id.* at 758, 779 P.2d at 135, we held that "the state [has] the options of actively collecting tax liabilities through the filing of a lien against all of the debtor's property, or passively collecting those taxes through the means provided in Section 7–1–82," *id.*

{8} The Bank seeks to distinguish *First Interstate* on several grounds. It points out that in that case the foreclosure judgment had specifically reserved the Department's rights under Section 7–1–82. *Id.* at 757, 779 P.2d at 134. The failure to do so here, the Bank argues, bars the Department from making a claim of right under Section 7–1–82. The Bank also contends that the 1991 amendment to NMSA 1978, Section 60–6(A)–19 overruled the holding of *First Interstate* in the foreclosure context by strengthening the property interests of those who obtain liquor licenses through foreclosure actions. The Bank's third argument is that the Department could not refuse to give it clearance pursuant to Section 7–1–82(A) because Kit Carson, the entity that allegedly owed the gross receipts taxes, was not a "delinquent taxpayer." We agree with the third argument and therefore need not address the others.

{9} Section 7–1–82(A) speaks of notification by the Department that "the licensee or any person authorized to use the license is not a delinquent taxpayer as defined in Section 7–1–16 NMSA 1978[.]" The Bank does not dispute that Kit Carson was authorized to use the license and owed gross receipts taxes. It argues only that Kit Carson could not have been a delinquent taxpayer because the State had not assessed taxes against Kit Carson. Under Section 7–1–16 a delinquent taxpayer is not simply anyone who owes taxes. For a taxpayer to be a "delinquent taxpayer," the Department must have assessed taxes against the taxpayer or demanded payment from the taxpayer, and the taxpayer must have gone thirty days without paying the taxes, furnishing security for payment, or protesting the assessment or demand. (A demand for payment is made only when the seller of a business owes taxes, *see* NMSA 1978, §§ 7–1–61 (1989), –63 (1979), which is not the situation here.) The Bank's complaint alleges that the Department had not assessed any taxes against Kit Carson at the time that it required the Bank to pay those taxes to obtain clearance. On the assumption that the allegation is true, *see Trujillo*, 101 N.M. at 414, 683 P.2d at 969, Kit Carson was not a delinquent taxpayer and the Department had no ground for refusing to grant clearance for transfer of the liquor license.

{10} The Department raises two arguments against our conclusion. We reject both. First, the Department contends that the taxpayer need not be a delinquent taxpayer at the time of the request for clearance. It asserts that when it receives a request for clearance, it should be entitled to investigate whether any taxes are due and, if so, initiate action that could result in a determination that there is a delinquent taxpayer. This process would take a minimum of thirty days (because the taxpayer has thirty days to respond to an assessment before becoming delinquent) and could potentially take far longer.

{11} We are not persuaded by this argument. To be sure, Section 7–1–82(A)(1) fails to set a time frame for determining whether there is a delinquent taxpayer. But it would be unreasonable to construe that failure as creating an opportunity for the Department to delay indefinitely while it investigates and initiates procedures necessary to establish that a taxpayer is delinquent. Clearance by the Department is an essential

step in approving the transfer of a liquor license. The Legislature apparently contemplated such clearance as being a mechanical task. The Department was simply to determine whether those authorized to use the license were "delinquent taxpayers as defined in Section 7–1–16," a matter that could be easily determined in a short period of time. Presumably, the Department has ready access to the names of delinquent taxpayers. If the Legislature had contemplated a more involved process, in which the Department was to determine whether any taxes were owed by persons authorized to use the license, one would expect rather different language in the statute. We note that prior to the 1979 amendment to the statute, paragraph (1) required a certificate signed by the Commissioner of Revenue stating that the transferor "is not liable for any tax." 1975 N.M. Laws, ch. 116, § 5. We believe that the natural reading of Section 7–1–82(A)(1) is that eligibility for clearance is to be determined as of the time that the application for transfer of the license is otherwise complete. Reinforcing our view is a canon of interpretation of tax statutes: "Any doubtful meaning or intent of a tax statute must be resolved against the State and in favor of the taxpayer." *Field Enters. Educ. Corp. v. Commissioner of Revenue*, 82 N.M. 24, 27, 474 P.2d 510, 513 (Ct.App.1970); *accord Molycorp. Inc. v. State Corp. Comm'n*, 95 N.M. 613, 614, 624 P.2d 1010, 1011 (1981).

■ {12} The Department's second argument is that it is required to grant clearance under Section 7–1–82(A) only if the requirements of both paragraphs (1) *and* (2) are met. In other words, the Department should not provide clearance unless (1) no one authorized to use the license is a delinquent taxpayer and (2) the license applicant enters into a written agreement with the Department in which it assumes "full liability for payment of all taxes due or which may become due from engaging in business authorized by the liquor license." § 7–1–82(A)(2). Under that interpretation the Bank could be required to assume responsibility for taxes owed by Kit Carson even if Kit Carson was not a delinquent taxpayer.

{13} Again, we disagree. The statute states that the Alcohol and Gaming Division should not allow transfer of the license until the director of the division "receives written notification from the [Department] that: (1) the licensee or any person authorized to use the license is not a delinquent taxpayer as defined in Section 7–1–16 NMSA 1978; *or* (2) the transferee ... has entered into a written agreement with the [Department.]" § 7–1–82(A) (emphasis added). Thus, paragraph (2) provides an alternative way of obtaining clearance if there is a delinquent taxpayer—the license transferee can assume liability for the taxes owed. We reject the Department's attempt to replace the word "or" at the end of Section 7–1–82(A)(1) by the word "and."

{14} We recognize, as pointed out by the Department, that there is not perfect symmetry between paragraphs (1) and (2). Paragraph (1) relates only to past-due taxes owed by delinquent taxpayers, whereas paragraph (2) requires that the license applicant assume full liability for "all taxes due or which may become due." Thus, of the alternatives offered by the two paragraphs, the one offered by paragraph (2) provides assurance of payment with respect to more taxes. Nevertheless, this lack of symmetry hardly compels that "or" be construed to mean "and" at the end of paragraph (1). No absurdity flows from giving "or" its customary meaning. The Department suggests that the Legislature must have wanted to always have maximum assurance that taxes would be paid. But the Legislature may have believed that only when a delinquent taxpayer has been using the license, should the Department take the added precaution of an agreement pursuant to paragraph (2) to protect against tax evasion.

■ {15} Moreover, if "or" is replaced by "and," paragraph (1) would lose its essential purpose. If every applicant for transfer of a license must assume liability for "all taxes due or which may become due," why should the Department need to certify that no one authorized to use the license is a delinquent taxpayer? After all, the transferee would always have to pay any taxes owed by the delinquent taxpayer. One advantage of requiring certification under paragraph (1)

might be that the transferee would have to pay the taxes owed by the delinquent taxpayer prior to transfer of the license; but the advantage is a slight one—the transferee would have to pay the taxes prior to the annual renewal of the license in any event. *See* § 7–1–82(B) [1]; NMSA 1978, § 60–6B–5 (1981) (annual renewal). The Department's argument falls far short of requiring us to rewrite the statutory language. We conclude that paragraphs (1) and (2) are alternatives; if either one is satisfied, the Department must issue a clearance. We do not believe that Section 7–1–82(A) is ambiguous in this respect. But if there is any doubt regarding the meaning, we are reinforced in our conclusion, as we were with respect to the Department's first argument, by the canon that requires ambiguities in tax statutes to be construed against the taxing authority. *See*

*Field Enters. Educ. Corp.*, 82 N.M. at 27, 474 P.2d at 513.

## III. CONCLUSION

{16}   For the above reasons we reverse the district court's order dismissing the Bank's complaint and remand for further proceedings consistent with this opinion.

{17}   **IT IS SO ORDERED.**

BOSSON and ARMIJO, JJ., concur.

---

1.   Subsection B states:
    The director of the alcohol and gaming division of the regulation and licensing department shall not allow the renewal of any liquor license pursuant to the provisions of the Liquor Control Act until the director receives notification from the secretary or secretary's delegate that on a certain date:

(1) there is no assessed tax liability from engaging in business authorized by the liquor license or, if there is assessed tax liability, the licensee is not a delinquent taxpayer; and
(2) there are no unfiled tax returns due from engaging in business authorized by the liquor license.