219 F.2d 890
 KANSAS TRANSPORT COMPANY, Commercial Standard Insurance Company and Harold M. Kennard, Appellants,
v.
William Thomas BROWNING, Appellee.
William Thomas BROWNING, Cross-Appellant,
v.
KANSAS TRANSPORT COMPANY, Commercial Standard Insurance Company and Harold M. Kennard, Cross-Appellees.
 No. 4971.
 No. 4972.
 United States Court of Appeals, Tenth Circuit.
 February 11, 1955.
 
 COPYRIGHT MATERIAL OMITTED Paul R. Kitch, Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Wayne Coulson and Theodore C. Geisert, Wichita, Kan., were with him on the brief), for appellants and cross-appellees.
 C. H. Morris, Wichita, Kan., (Paul Harkey, Idabel, Okl., and Robert F. Bailey, Wichita, Kan., were with him on the brief), for appellee and cross-appellant.
 Before MURRAH and PICKETT, Circuit Judge, and SAVAGE, District Judge.
 MURRAH, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the District Court on a jury verdict in favor of the appellee, for personal injuries and property damages arising out of an accident in which the appellee's truck collided with a standing truck of appellant, Kansas Transport Company, on Highway 81 near Salina, Kansas. The appellee, Browning, has cross-appealed, complaining of the refusal of the trial court to increase the verdict, or in the alternative, grant a new trial limited to the amount of damages.
 
 
 2
 On the appeal, appellants complain of the refusal of the trial court to direct a verdict for the defendant-appellants on the grounds that the appellee's own testimony convicted him of contributory negligence, barring recovery. Primary negligence is not in issue.
 
 
 3
 At about 4:20 on the morning of the accident, and while appellee was driving his truck on a wide sweeping curve just before entering the Salina By-pass, he noticed the reflection of headlights of a vehicle about one-half mile ahead of him. Although he did not determine the type of vehicle, he did notice that it was traveling without the customary truck tail lights or running lights. As he started around the curve, he slowed down, dimmed his lights for an oncoming car and did not see a railroad crossing warning signal 600 feet from a railroad crossing. He continued to follow the vehicle in front until he collided with appellant's truck while it was stopped at the railroad crossing. The appellee testified that just before he collided with the truck he dimmed his lights for an oncoming car and kicked them "back up on bright" to find the transport truck about 30 feet in front of him. He turned abruptly to the left, but collided with the rear end of the truck, causing his injuries and damages. He testified that he was traveling about 35 to 40 miles an hour; that his dimmed lights hit the pavement about 30 to 40 feet ahead; that the glare extended another 10 or 20 feet, more or less, and that he could have stopped his truck at the speed he was traveling in approximately 75 feet.
 
 
 4
 Without objections or suggestions, the jury was instructed that the driver of a vehicle on the public highway of Kansas is required to drive at such rate of speed that he is able to stop within the actual range of vision, if necessary, to avoid any objects on the road ahead of him; and that this rule applies regardless of his lighting equipment and even though a higher maximum speed limit may be applicable to the highway being traveled; that the absence of lights in the rear of defendant's trailer did not excuse the plaintiff from complying with this rule; and that if the jury found that the plaintiff was driving his truck at such a rate of speed that he could not stop within his actual range of vision, he was not exercising reasonable care for his safety and his own negligence required that the verdict be for the defendant. The jury was further told that the only exception to the rule just stated material to this case is where the circumstances are such that a driver, from no fault of his, is suddenly and unexpectedly blinded by oncoming traffic and thereafter exercises reasonable care under the circumstances. In another part of the instructions, the jury was told that if they found from the evidence that the lights on the rear of defendant's truck were not operating, but further found that the plaintiff knew of the presence of a vehicle ahead of him on the highway, the rear lights of which were not operating, and such facts were known to him in sufficient time before the accident to enable him to decrease the speed of his vehicle to avoid colliding with defendant's truck, he was then aware of of a special hazard and had the duty to decrease his speed in order to avoid colliding with defendant's truck.
 
 
 5
 These instructions correctly and succinctly stated the applicable and controlling law of Kansas. Harrison v. Travelers Mutual Casualty Co., 156 Kan. 492, 134 P.2d 681, and cases cited; Bottenberg Implement Co. v. Sheffield, 171 Kan. 67, 229 P.2d 1004. Under this rule, the plaintiff was bound to detect and heed the presence of the standing truck in front of him, unless sudden and unexpected circumstances arose to prevent him from doing so in the exercise of ordinary care.
 
 
 6
 On the special issues, the jury found: (1) that immediately prior to the collision the plaintiff could see 75 feet in front of him with his lights dimmed; (2) that he was traveling 35 to 40 miles per hour; (3) he could have stopped his truck at that speed in approximately 75 feet; (4) that he was suddenly and unexpectedly blinded by the lights of approaching traffic just before the collision; and (5) the tail lights of the defendant's truck were not burning.
 
 
 7
 The plaintiff testified that he was looking ahead for obstacles on the road, but failed to see the standing truck at the railroad crossing "because he didn't have any lights on the rear of the truck"; and "that is the only reason" he could give. He testified that the lights on the oncoming car momentarily blinded him when he was about 100 yards away, but that he believed the oncoming car dimmed its lights and the situation confronting him at that time was the usual hazard of driving on the highway at night — that it was "no different from what you normally would encounter in your night driving." In his deposition taken before trial, parts of which were repeated for the record during the trial, he testified that the oncoming car did dim its lights and that he did not remember that they interfered with his vision.
 
 
 8
 "The meeting of cars on a main traveled highway is a common and not a special experience of the traveling public." Harrison v. Travelers Mutual Casualty Co., supra [156 Kan. 492, 134 P.2d 686]. And, the momentary blinding by the dimmed lights of an oncoming car is not a sudden and unexpected blinding within the meaning of the exception to the rule. Appellee's companion, who was following in his truck about 100 feet in the rear, testified that the oncoming car did not dim its lights; that just before he passed the car, an explosion of dust and the lights suddenly blinded him. Appellee relies upon this testimony to support the findings that he was "suddenly and unexpectedly blinded" by the lights of the approaching traffic. But this witness cannot testify through the eyes of appellee. If the oncoming lights did not interfere with the appellee, and if, as he stated, the lights were dimmed, the evidence of the driver of the following truck is of no probative value, for the simple reason that he cannot testify to what the appellee did not see. The oncoming car may have dimmed its lights for the appellee and brightened them for the next truck. Moreover, where a plaintiff personally testifies to a set of facts which clearly preclude his recovery, he is bound thereby even though other witnesses called in his behalf contradict him and testify to facts which would permit his recovery. Bell v. Johnson, 142 Kan. 360, 46 P.2d 886.
 
 
 9
 While we are most reluctant to set aside the verdict of a jury on correct instructions, it is conclusively clear to us that the appellee either could have stopped his truck within the range of his vision, or he negligently failed to drive his car at a rate of speed which would enable him to do so. His own statement of the circumstances conclusively convicts him of contributory negligence under the applicable rules of the road, and the judgment is accordingly reversed with directions to enter judgment for the appellants.