Kathie BRILLHART,

v.

**PHILIPS ELECTRONIC NORTH AMERICA CORP., d/b/a/ Philips Medical Systems, N.A.**

**Civil No. 94–0025 MV/LFG/WWE.**

United States District Court,
D. New Mexico.

Aug. 1, 1996.

Phillip P. Baca, Wagner & Associates, Albuquerque, NM, for Kathie Brillhart.

Duane C. Gilkey, Gilkey & Stephenson, Albuquerque, NM, for Philips Electronics North America Corporation.

*RULING ON PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL*

EGINTON, Senior District Judge.

Plaintiff, Kathie Brillhart, brought this diversity action against defendant, Philips Electronic North America Corporation, alleging gender discrimination and retaliatory discharge under the New Mexico Human Rights Act, N.M.Stat.Ann. §§ 28–1–1 through 28–1–15. On April 26, 1996, a jury returned a verdict in favor of defendant on both claims. Plaintiff moves for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 on the retaliation claim, and a new trial pursuant to Fed.R.Civ.P. 59 on the gender discrimination claim. For the following reasons, the motion for judgment as a matter of law will be granted, and the motion for a new trial will be denied.

*BACKGROUND*

On January 28, 1993, plaintiff was terminated from her position as an Account Manager of defendant by Bruce Campbell who was the Regional Manager and her direct supervisor. The termination was preceded by several letters, memos and meetings between plaintiff and Campbell discussing plaintiff's work performance which Campbell found unsatisfactory. The first meeting was on January 11, 1993.

On January 14, 1993, Campbell prepared a memo memorializing the topics of discussion at the January 11th meeting, and faxed the memo to his superiors, George Besse and Richard Munson. The memo states that Campbell did not see any "positive trends of improvement" in plaintiff's performance. It also states that he wished to have a follow-up meeting with plaintiff on January 22, 1993.

Before plaintiff received Campbell's memo, she mailed a letter to Campbell dated January 17, 1993. The letter addressed the topics that were discussed at the January 11th meeting. Campbell wrote a memo dated January 18, 1993, in response to plaintiff's letter. The memo stated that he would Federal Express his January 14th memo for delivery on January 19th. The memo did not state that plaintiff was going to be terminated.

On January 19, 1993, plaintiff sent a letter in response to Campbell's memos. The letter began with the statement: "It is my contention that a case had been built against me because I'm female."

### JUDGMENT AS A MATTER OF LAW

■ Judgment as a matter of law may be granted if "there is no legally sufficient evidentiary basis for a reasonable jury to find for the [nonmovant]" on an issue that is controlling under the applicable law. Fed. R.Civ.P. 50(a). Judgment as a matter of law can only be granted where "the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made." *E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n.,* 763 F.2d 1166, 1171 (10th Cir.1985) *citing Symons v. Mueller Co.,* 493 F.2d 972, 976 (10th Cir.1974). In making the determination, the "evidence and inferences must be viewed in the light most favorable to the nonmoving party." *Rajala v. Allied Corp.,* 919 F.2d 610, 615 (10th Cir. 1990) (citation omitted). The court may not weigh the evidence or judge the credibility of the witnesses. *E.E.O.C. v. Prudential Fed. Sav. & Loan Ass'n.,* 763 F.2d at 1171.

■ As the burden of proof must be taken into consideration, a movant who carries that burden necessarily carries a heavy burden in a motion for judgment as a matter of law. In such a case, the test is not whether there is sufficient evidence upon which the jury could properly find against the movant. The evidence must be "tested for its overwhelming effect." Judgment as a matter of law for the party bearing the burden of proof may be granted "only where [s]he has established h[er] case by evidence that the jury would not be at liberty to disbelieve." *Hurd v. Am. Hoist & Derrick Co.,* 734 F.2d 495, 499 (10th Cir.1984) (citations omitted).

■ Judgment as a matter of law must be granted where a party's own testimony indisputably establishes his liability as a matter of law. *Sandoval v. U.S. Smelting, Refining & Mining Co.,* 544 F.2d 463, 468 (10th Cir.1976). When a party testifies to a fact peculiarly within his knowledge, the testimony is conclusive on that issue unless the statement is modified or explained by additional testimony of that party. *McCormick on Evidence* § 258 (John William Strong, ed., 4th ed. 1992); *Brown v. Poland,* 325 F.2d 984, 986 (10th Cir.1963); *Kansas Transport Co. v. Browning,* 219 F.2d 890, 893 (10th Cir.1955). If the testimony goes to a pivotal issue, it will defeat a verdict in that party's favor. The testimony is conclusive even if other witnesses contradict the party and testify to facts that would otherwise permit a verdict in the party's favor. *Kansas Transport Co. v. Browning,* 219 F.2d at 893.

Although the strength of the evidence required to warrant a judgment as a matter of law in a diversity action is a question of federal law, the underlying cause of action is governed by state law. *Brown v. McGraw–Edison Co.,* 736 F.2d 609, 612–13 (10th Cir. 1984). In this case, plaintiff alleges retaliatory discharge in tort, and in direct violation of the New Mexico Human Rights Act which makes it unlawful for an employer to retaliate against an employee who has complained of discrimination on the basis of sex. N.M.Stat.Ann. § 28–1–7(I).

■ Regardless of which theory is employed, plaintiff must show, by a preponderance of the evidence, (1) that defendant violated the Human Rights Act or that she was "discharged because she performed an act

that public policy authorized" as established in the Human Rights Act, and (2) that a causal connection exists between her acts and the discharge. *Chavez v. Manville Products Corp.*, 108 N.M. 643, 647, 777 P.2d 371 (1989). Although the New Mexico courts have not formally adopted a shifting burden of production framework such as that used to interpret federal law, *Shovelin v. Central N.M. Electric Cooperative Inc.*, 115 N.M. 293, 850 P.2d 996, 1006 n. 8 (1993), they have recognized that "the central element of retaliatory discharge is whether the employer's motive for discharging the employee was the employee's engagement in the protected activity." *Lihosit v. I & W, Inc.*, 121 N.M. 455, 913 P.2d 262, 267 (Ct.App.1996).

■ There is no dispute that plaintiff's charge of sex discrimination in the first sentence of her January 19th letter was protected by public policy as established in the New Mexico Human Rights Act. The issue is whether Campbell's testimony regarding that sentence constituted an admission that the jury was not at liberty to disbelieve, and mandated a judgment for plaintiff.

The testimony at issue was elicited on direct examination by plaintiff's counsel. Campbell testified as follows:

Q. Well then, let's move to the January 19th letter, which would be Exhibit [8]. Now, you considered Kathie Brillhart's January 19th letter to be hostile; is that correct?

A. That's correct.

Q. And you considered her January 19th letter to be combative?

A. That's correct.

Q. And in particular, you considered her complaint about sex discrimination to be an attempt to blackmail you; isn't that fair?

A. That's correct.

Q. And it's fair to say that when you received Kathie Brillhart's January 19th, 1993 letter, you were angry?

A. I was very upset, yes.

Q. Would you say that you were furious to have received Kathie's January 19th, 1993, letter?

A. No. I was surprised more than anything else.

Q. Now, Kathie Brillhart would have had to retract both her January 17th letter and her January 19th memos in order for you to change your mind about terminating her; isn't that correct?

A. No. We could have lived with the January 17th memo. We would have had to do some fence building, but not the 19th, no.

Q. Okay. So she—You were—It's your testimony that Kathie Brillhart would have had to have retract her January 19th memo in order for you to change your mind about terminating her?

A. I don't know if she necessarily would have had to retract the entire memo but that first paragraph, she would have had to retract.

Q. Okay. So, in order for you to change your mind about terminating Kathie Brillhart, she would have had to retract the very first sentence in her January 19th, 1993, letter?

A. At a very minimum.

Plaintiff contends that this testimony constitutes an admission that plaintiff's complaint of gender discrimination motivated Campbell to terminate her. Defendant argues that the testimony is not an admission of illegal motive. It argues that it can be inferred from Campbell's testimony that he had already made up his mind to terminate plaintiff.

This testimony, even when construed in the light most favorable to defendant, was an admission that plaintiff's statement caused Campbell to make the decision to terminate plaintiff irreversible, and constituted direct evidence of impermissible motive that the jury was not at liberty to disbelieve. This conclusion is the same whether or not Campbell decided to terminate plaintiff and/or procured approval to terminate plaintiff before receipt of her January 19th letter.

The determination of whether Campbell's superiors had approved plaintiff's termination and the exact timing of such approval rested upon the credibility of the witnesses

and the proper weight to be given to the evidence, and was clearly within the province of the jury. There was sufficient evidence for the jury to find that Campbell, Munson and Besse discussed termination, and that the approval was given to Campbell prior to his receipt of plaintiff's January 19th letter.

Campbell testified that he recommended plaintiff's termination to Munson and Besse at the time he sent them his January 14th memo, and that they approved the termination by at least January 18th. Munson testified that, although he and Campbell discussed termination after he received Campbell's January 14th memo, they did not decide to terminate plaintiff at that point. He testified that they agreed that the situation was "unfixable" unless "attitudes were changed." However, he testified that he recommended to Besse that termination should be considered, and that the decision to terminate plaintiff was made before January 19th.

Besse testified, through deposition testimony that was read into the record, that after the January 14th memo was faxed to him, he and Campbell discussed termination. He testified that plaintiff's January 17th memo "probably cemented" his thoughts as to plaintiff's termination because it did not indicate any desire to change. Besse testified that he approved the decision to terminate plaintiff before January 19th.

However, there is no dispute that the final decision of whether to terminate plaintiff was Campbell's. John Carroll, a Vice President of Human Resources of defendant, testified that the Regional Managers, including Campbell, made all the termination decisions. Campbell testified that, although he believed he needed approval from his superiors, the ultimate decision of whether to terminate plaintiff was his. He also testified that he considered this suit to be against him personally even though he was not a named party. Accordingly, Campbell's motivation for terminating plaintiff was the pivotal issue with regard to the retaliation claim.

Campbell's testimony indicates that even if he had gotten approval for the termination, he could have changed his mind depending on how plaintiff handled his criticisms. He testified that plaintiff's January 17th letter

and the balance of her January 19th letter were not insurmountable hurdles. Although he and plaintiff would have had to do some fence building, plaintiff would not have had to retract the letters in order to avoid termination. However, he stated categorically that there was no chance that he would change his mind if plaintiff did not retract the first paragraph of her January 19th letter. In fact, he testified that she would have had to retract the first sentence "at a very minimum" in order to avoid termination.

Although this testimony was elicited by opposing counsel, it was not in response to a leading question that required only a "yes" or "no" answer, or even a series of such questions. Words were not put into Campbell's mouth. He volunteered the information. When asked whether plaintiff would have had to retract her January 19th memo in order for him to change his mind about terminating her, he replied:

> I don't know if she necessarily would have had to retract the entire memo but the first paragraph, she would have had to retract.

Counsel's next question merely asked Campbell to confirm that testimony which Campbell did.

Furthermore, Campbell never explained or modified this testimony. Under friendly examination by defense counsel, he conclusively testified that the decision to terminate plaintiff was made before receipt of the January 19th letter. However, that testimony does not necessarily contradict the testimony at issue, and certainly does not explain or modify it. Defense counsel argues that the testimony at issue was in response to hypothetical questions which required Campbell to speculate. However, explanations in legal briefs are not evidence. Campbell himself never gave such an explanation. Lastly, even if the testimony of Carroll, Munson and Besse could arguably be construed as contradicting Campbell's testimony, Campbell's motivation for terminating plaintiff was peculiarly within his knowledge, and no amount of testimony to the contrary by other witnesses could overcome his admission.

*Sex Discrimination*

█ Plaintiff also seeks a new trial on her sex discrimination claim on the grounds that the exclusion of testimony regarding certain incidents constituted reversible error. A trial court has the discretion to order a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." Fed.R.Civ.P. 59(a). A motion "may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence." *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). The improper admission or exclusion of evidence is grounds for a new trial if the substantial rights of the parties were affected. Fed.R.Civ.P. 61; *Herndon v. Seven Bar Flying Service, Inc.,* 716 F.2d 1322, 1326 (10th Cir.1983).

The proffered testimony in this case was about three incidents involving statements by Charles Lewis, an Account Manager under the supervision of Campbell. The first two took place when Lewis allegedly asked Debra Parten, also under the supervision of Campbell, the color of her underwear and about her sex life. Parten testified at deposition that she complained to Campbell and that Lewis never again made such comments to her.

The third incident was testified to at deposition by Shelley Moore, an Account Manager under the supervision of Campbell. She testified that in January 1994, in the presence of Campbell, Lewis asked her if she was sleeping with Joe Pavao, the Area Service Manager. Moore testified that it was her belief that Lewis said this to put her down in front of her peers. She also stated that she believed it was incumbent upon Campbell to reprimand Lewis but that he failed to do so.

Plaintiff argues that testimony regarding these incidents would have (1) established Campbell's hostile attitudes towards women; (2) rebutted Campbell's testimony that he did not discriminate against women; and (3) demonstrated that his proffered reason for terminating plaintiff was pretextual. The court did not permit this testimony to be admitted at trial because, while it might be relevant to a sexual harassment claim, it was not relevant to a claim, such as this, of discharge due to the fact that plaintiff is a woman. Even if the proffered testimony was marginally relevant, its probative value was outweighed by the prejudice it would have introduced.

█ This court continues to believe that admission of this testimony into evidence would have been improper. Relevant evidence is

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed.R.Evid. 401. Evidence of other acts is relevant and admissible to prove motive or intent. Fed.R.Evid. 404(b). However, to be admissible, even relevant evidence must be more probative than prejudicial. Fed. R.Evid. 403. Unfair prejudice includes "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." *Heyne v. Caruso,* 69 F.3d 1475, 1481 (9th Cir.1995) (citation omitted). The decision to exclude or admit evidence is within the sound discretion of the trial court. *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1156 (10th Cir.1990) (citations omitted).

█ The testimony of employees regarding their treatment by an employer under similar circumstances and close in time to the circumstances of a plaintiff are relevant to the question of an employer's discriminatory intent towards a plaintiff. *Spulak v. K Mart Corp.,* 894 F.2d at 1156; *Heyne v. Caruso,* 69 F.3d at 1480. In *Spulak v. K Mart Corp.,* an age discrimination claim, the admitted testimony was by two employees in the protected age group who were fired a very short time after the plaintiff. One employee was told by the employer, who was encouraging the employee to retire, that the plaintiff took early retirement at the employer's request. As the circumstances surrounding both witnesses' retirements were so similar to those surrounding the plaintiff's retirement, the court found the testimony probative of the employer's discriminatory treatment of the plaintiff. 894 F.2d at 1156.

*Heyne v. Caruso* involved a *quid pro quo* sexual harassment claim in which the plaintiff claimed to have been terminated after she rebuffed the sexual harassment and sexual advances of the employer. The Ninth Circuit found that testimony of other female employees regarding sexual harassment by the employer was relevant to the employer's motive, and concluded that the district court erred by excluding such evidence. 69 F.3d at 1481.

█ In this case, the circumstances regarding the Lewis incidents were not similar to that of plaintiff. The proffered testimony was with regard to allegedly sexually harassing statements by Lewis that were allegedly made in front of or brought to the attention of Campbell. At least one of the incidents took place long after plaintiff was terminated and neither Parten nor Moore were terminated. However, plaintiff does not claim that Campbell terminated her after she objected to his sexual harassment or that he failed to reprimand other employees under his supervision for sexual harassing behavior. She claims to have been discriminated against because she is a woman.

The court notes that in her January 19th letter to Campbell, plaintiff stated that on August 17th, Lewis had told her "you're acting like an hysterical female. . . ." The letter was admitted into evidence at trial, as was the testimony of both plaintiff and Campbell regarding this statement. However, no evidence was introduced showing that plaintiff reported the incident to Campbell at the time it took place. Thus, it cannot tend to show Campbell's generally discriminatory intent towards women.

### CONCLUSION

For the foregoing reasons, plaintiff's motion [115] for judgment as a matter of law is GRANTED and motion for new trial is DENIED.